and so we'll hear from Mr. Lopato. May it please the Court, I am John Lopato from Washington, D.C., the attorney for the employer petitioner here today. With me at counsel's table is Dean Brockbank, the Associate General Counsel of Light Horse Resources, Inc., which is the parent company of Big Horn Coal Company. Your Honor, the Federal Black Lung Benefits Act has a statutory limitation in 30 U.S. Code 932F. Would you get up a little closer to the microphone, please? That says that if a claim must be filed within three years of a medical determination of total disability due to pneumoconiosis. The Administrative Law Judge here made a finding that the June 1, 2010 claim of Mr. Sadler was not filed within three years of a 2005 medical determination, a ten-page report that was sent to Mr. Sadler and read by him. Now that medical report is in the appendix at 116 and on page 125 it shows it was mailed to Mr. Sadler. The case should have been over then with that finding. It was untimely. The claim was untimely. It should have been denied. But the Administrative Law Judge said, no, I'm going to consider the rest of the record under a regulation that the Secretary of Labor promulgated, 720 CFR 725-308, that says that I can excuse an untimely filing under extraordinary circumstances. Well, counsel, let me ask you this question, then, because in your opening brief you argued that we review that issue de novo. That's your second issue. And then in your reply brief you change your mind and say that we can review that with an abuse of discretion. Now, which way do you have us review it today? Your Honor, the abuse of discretion standard is what the Benefits Review Board used, and both those standards require that the extraordinary circumstances, which is an equitable tolling doctrine, be interpreted according to the case law from this circuit and from the U.S. Supreme Court on what equitable tolling is. Long answer, but are you arguing that it's a de novo review here? Yes. All right. Because the legal questions are embedded in the exercise of the judge's discretion, of the ALJ's discretion. The administrative law judge focused on what happened at a June 2008 hearing where this claimant attended. And this claimant had a lawyer at the June 2008 hearing, employer had counsel, I was the counsel for the employer. And here's, before I tell what happened at the June 2008 hearing, let me give the Court a little background on how these black loan claims work in terms of there being no race judicata principle yet applied to the federal black loan program. That means that if a claimant's filing is denied, he can refile later on without having that denial counted against him in traditional race judicata principles. Now, there's been no testing of that yet by the appellate courts, but that's pretty much been ingrained in the federal black loan program for decades. And that's because the theory is, and it's only a theory, that pneumoconiosis is a progressive disease, and if the minor's not disabled at a certain time, he will be later on. Now, the reason it's only a theory is because the progressive disease medicine epidemiology is based on continuous exposure to the minds. And these claimants that are refiling have long left the minds. What was pending at the June 2008 hearing was a petition for modification of a denial of a 1990 claim by this claimant, Mr. Sadler. This case goes back that far. And when the claimant and his lawyer, Mr. Allback, arrived at the hearing, the administrative law judge began a long colloquy with them saying, what do you want to do? Do you think you have enough evidence to proceed on your petition for modification because it's been denied so far by the claims examiners at the Department of Labor? Do you think you want to go forward? And he told them, you know, what claimants often do in these situations is they refile with the Department of Labor, and then they get a whole new series of Department of Labor paid medical examinations done at no cost to the minor, and their prior denials are not held against them whatsoever. So the administrative law judge gave that informal advice. We called it advice. We've dropped that argument that the ALJ exceeded his authority and so forth. We've dropped that conflict of interest argument. But he gave that information. At the time that information was given, had Sadler indicated or had Sadler's attorney indicated that that's what they wanted to do, or did this just come out of the blue? No, they agreed. I mean, just chronologically, had Sadler said, or his attorney, we think we would like to drop this and bring it later, and then the ALJ said that's fine and then gave his colloquy, or did the ALJ bring the subject up first? Hey, I got a great idea, guys. Why don't you drop it and bring it later? Who brought the subject up first at that hearing? I attended the hearing and the transcripts and the record. It didn't come up that way. The claimant's lawyer and the ALJ started by, what do you want to do at the hearing? And the administrative law judge said, do you think you have enough medical evidence now to go forward? And the claimant and his lawyer said, well, we don't know. Well, in fact, this determinative September. So you were answering my question that you don't know the answer to that? The answer is it was in between, Your Honor. It was no clear who initiated it. And we don't fault the administrative law judge for giving that commentary at that time, because the administrative law judge, unlike the district court in the Carrill case from this circuit, did not know about this determinative September 2005 medical report that was sitting in Mr. Sadler's papers, the same box of papers that he delivered to this judge all back. And the record in 169, the appendix of 169, has these reports and summaries from the Montana State Bar that took proceedings against Mr. Allback, and they confirmed he had this box of papers but didn't really look at it and didn't prepare it for the June 2008 hearing. The key to that, the importance of that September 2005 medical report, that not only was it a three-year time bomb sitting in the file, but it would have led to the award of benefits to Mr. Sadler in June 2008. Was there any obligation, I'm sorry to interrupt you, counsel, but let me ask you a question. Was there any obligation on behalf of Mr. Sadler to have furnished that report to Bighorn? Absolutely. All the Blackhorn hearings. Okay. Can you identify the regulation or the statute or the protocol that would have required that prior to a request for disclosure? The regulations at 20 CFR 725456, I believe it is required, exchange of medical records 20 days before the hearing. And an important record like this, like any proceeding, you just can't spring it on the other side. Now, have you argued that in either your opening brief or your reply brief, that under 725.54 Mr. Sadler had an obligation to have furnished that report to Bighorn? We did in our reply brief, Your Honor. But that never came up at the hearing because no one knew about it. And let me return to the point I was making, how important and helpful this would have been to Mr. Sadler at the June 2008 hearing. That 2005 medical determination report, the 10 pages in the record, was from the same pulmonary specialist at National Jewish Hospital here in Denver that examined him after his 2010 claim. That's how we found out about it. And she referred, she said, this minor's back after I examined him in 2005. I have a file on him. We put a subpoena on that doctor and got the report. But later on, when the administrative law judge approved the 2010 claim, we conceded it later because the medical evidence was much stronger at that time. The administrative law judge used the September 2005 medical report to start the onset date of benefits for this claim. He said it's that strong. I'm going to award benefits back to September 2005. So you have conceded now that he did have black lung disease? Yes. So does this case have any dollar consequences to the widow? Your Honor, yes. But the claimant opened the door to the following argument that we should, we must make under our reply brief. If this case, if we prevail here in this case under the rule of law as declared untimely, the benefits that were paid Mr. Sadler before his death will become an overpayment. Now, let me talk about the- We did not make the payment, Your Honor. During litigation- Has Bighorn made that commitment? No. We did not make any payments. I'm not asking whether you made a payment. Are you making a commitment that you will not seek a reimbursement of those overpayments if you win? Your Honor- Yeah, that can just be said yes or no. It's not a correctly respected commitment. It's not a correctly famed question. Under the Black Lung Interim Benefits Program, pending litigation, the Black Lung Disability Trust Fund pays benefits to these claims. Right. So the widow has gotten the payment under the pension fund. The widow's case is separate. Let me, that also is, respectfully I can clarify for the Court. The widow's claim going forward is completely separate. We have conceded that. We will be soon paying that. The trust fund paid that up until now. We just got a payment calculation order this week on that case. So she is going to continue to get survivor benefits regardless of this outcome of this case. Exactly. All right. Now, what about the alleged overpayments if you win this case against the minor? What's going to happen to those? The overpayments, we explained in page 9 in footnote 4 of our reply brief, that overpayment becomes subject to collection against the estate or the widow under the discretion of the Secretary of Labor. I know that. And I'm asking, has the Secretary determined or disclosed to us how that discretion is going to be exercised? I can't speak for them, Your Honor. Their lawyer is here today. But never in the history of the Black Lung Program has the Secretary of Labor gone after a widow or an estate of a deceased minor for an overpayment. But there's always a first time. And I'm where Judge Ebell is. I want to know that answer. Your Honor, in Judge Ebell's decision in the Queen case from this Court, which is should control here, that's an argument based on sympathy and the remedy that claimants have in these cases where their lawyer follows up and it's imputed to the claimant. The lawyer can sue. Well, let me take you into another area. Because then what you're arguing is in regards to the fact that his time was up and there was no ability by the ALJ or anyone else, including us, to extend that time. So what do we do with the CFR that says, except in exceptional circumstances, which they found that those, that's why I wanted to know how you want me to consider the standard of review. How do we consider that when it's very clear that in exercising something, whether it be at law or abuse of discretion, the ALJ had the authority, at least they thought they did, to extend the time. He did not have the authority because he was only proceeding under equitable tolling principles. Equitable tolling is different than equitable estoppel. Equitable tolling is where circumstances are not in the control of the claimant or the plaintiff and prevent him from timely filing. One hundred percent of these circumstances, in fact, were in control of this claimant and his lawyer at the June 2008 hearing. The administrative law judge never said, you don't have to read what's in your file. You don't have to look at papers. And the administrative law judge was not appraised of this potential three-year problem. And as I said, it would have been to the claimant's advantage to show the court that 2005 medical determination. Well, granted that, counsel, we can figure that out ourselves. But we extend the question of do we or do we not say that there was some type of error or not an error when they extended the time? There was error. The administrative law judge extended the time on false circumstances where he said the claimant. Who created the false circumstances? Are you arguing because it's in his file that he didn't know that he falsified it? No, the administrative law judge never had this document in the 2008 hearing. The administrative law judge did not extend any time limits. He was talking about something else. He said you should probably file a new claim. They didn't rely on anything the administrative law judge did. Counsel, I'm sorry to interject, but he didn't actually say, Judge Colwell didn't actually say that, did he? He said you can file a new claim. And that seems to be a difference that really matters because if you say you can, if the judge tells me, particularly as a layperson or even as a lawyer, that I can file again, I view that as an absolute. I unequivocally can refile. That's opposed to someone saying, Judge Colwell, saying, well, assuming that there aren't any other limitations, such as a statute of limitations, you can refile. Now, he didn't say that. He said you can. And couldn't an adjudicator reasonably interpret that to say, delude him into the security that he could? No, Your Honor. The inquiry here should be on the claimant and his lawyer, not on Judge Colwell. Judge Colwell knew nothing about this determinative medical report from September 2005. He would have gone in a completely different direction. The employer knew nothing about it. The only people that knew about it were the claimant and his lawyer at the hearing, and they remained silent. And they let the judge talk to them as if they had no evidence to go forward. He told them, you know, you can file a new claim and be under new regulations and proceed that way. And they chose at the hearing to do it. He didn't implement his order until later. I think I'm over my time, Your Honor. I don't know if I have any left for rebuttal. You don't, but I'm going to give you a minute and a half. I pray the Court applies Judge Ebel's case in the Queen opinion. That controls here fully. Thank you. Let's give the appellee an extra minute and a half, and we'll give the appellant a minute and a half for rebuttal. Good morning. May it please the Court, my name is Anne-Marie Scarpino, and I represent the Director of the Office of Workers' Compensation Programs of the U.S. Department of Labor. I am here this morning solely for the purpose of addressing the employer's challenge to the Department's regulation that allows for equitable tolling of the statute of limitations for the filing of claims under the Black Lung Benefits Act. The Court should find that the regulation is valid because it is consistent with both the Black Lung Statute and the Supreme Court case law regarding equitable tolling. The employer's challenge rests solely on the ground that the statute does not specifically permit equitable tolling. But this argument ignores the Supreme Court case law, which has been consistent, that a statute of limitations is subject to a rebuttable presumption in favor of equitable tolling unless equitable tolling is inconsistent with the statute. The employer has pointed to nothing in the statute. Why would equitable tolling be inconsistent with a statute whose main purpose was to be construed liberally in favor of the claimant, Black Lung-afflicted coal miners? It is not, Your Honor. That's our point, that there is nothing inconsistent in the Black Lung Statute with the concept of equitable tolling. And, of course, the employer has not been able to point to anything in the statute to rebut equitable tolling. We would ask the Court respectfully to find that the statute is valid and that the regulation is valid. Yes. If the Court has no further questions, I will cede the remaining of my time to Mr. Smith, with the Court's permission. Thank you. May it please the Court, my name is Evan Smith. I'm here today on behalf of Sylvia Sadler, the widow of Edgar Sadler. So, Bighorn Coal's argument is as easily stated as it is counterintuitive. Sadler must now lose because he clearly should have won in his last claim. I think it's a little bit, at least my concern is a little bit different than that. It doesn't turn on whether they should have won or not. But it is, to start, did the ALJ make an error? Because this extraordinary circumstances, I think, is predicated on, yeah, you should get relief when your judge or ALJ makes an error. But does a judge or an ALJ make an error in making a ruling which would be legally correct? Or not even a ruling, just making a suggestion that the parties were still free to accept or reject. So he wasn't ruling at all, which makes the error a little less likely because it's not binding. But is it even incorrect when it is predicated upon, when it is a correct piece of advice based on everything that ALJ knew? If you were going to go to a judge and say, judge, you made an error in not ruling for me because I had a witness that would have been so good for me, but I never presented that witness, and you erred because you didn't anticipate that witness and that that evidence would be helpful to me, we wouldn't say that was error. So I'm kind of at a loss to figure how the ALJ erred. And I guess the predicate of that is, do you agree with my premise that if the ALJ did not err, then there's no extraordinary circumstances? Or are you saying that there should be extraordinary circumstances even in the absence of an ALJ error? The core point here, I think, is that the equitable tolling here, it's an equitable remedy. And when the new claim was filed and Judge Caldwell was asked to make the decision about whether equitably to extend this, then he was in a position where he could take all the facts into account. All the facts that he knew. Yes. And he didn't have to be a magician and know things that weren't in the record at all. Yes, but what I'm saying is that when he was being asked to make this determination in 2015, the equitable decision about whether to grant Bighorn Cole's motion to dismiss the claim based on timeliness, or whether to equitably extend the deadline, at that point, Judge Caldwell knew the full factual circumstances of this. Did he know about the medical diagnosis? Yes, he did. That was attached as part of the motion to dismiss. That was what Bighorn Cole was using as the factual support for his statute of limitations argument. So at the time when the equitable determination to extend the deadline was made, the judge was aware of all the relevant facts. Can I follow up on Judge Abell's inquiry? Yes. And that is, so in 2008, when A. L. J. Caldwell had told Mr. Sadler that he could refile, to make Mr. Lopato's point, A. L. J. Caldwell, if he had scoured every page of the record, he would not have had the 2005 report from Dr. Rose, correct? I believe you're correct, Your Honor. And so how could Mr. Sadler have been reasonably lulled in 2008 to understand that there would be no time limitation on refiling when he's charged with knowledge of this three-year provision he knew or should have known of the existence of the 2005 report, putting aside the fact that he was represented by counsel. So how could, I guess this is a long-winded question, to get to the point, how could Mr. Sadler have taken A. L. J. Caldwell's comment to have been a reflection on this three-year provision when Mr. Sadler knew that A. L. J. Caldwell had no way of knowing of Dr. Rose's 2005 report? So how could he have been lulled into this sense of security? Sure. Well, two points. First, I'm not arguing that there is no time limit here. Oh, I understand. Yeah, that as, you know, equitable tolling can only go so far. And I believe that what happened here is after this, within a reasonable amount of time, Mr. Sadler did file a new claim. And so if, you know, if he had waited 10 years, 20 years, yeah, then I think we're in a completely different situation. Based on what A. L. J. Caldwell had said. Because he knew that A. L. J. Caldwell had no way of knowing about Dr. Rose's 2005 report. I'm sorry, restate your question. Well, your argument, as I understand it, and A. L. J. Caldwell's rationale, was that in the 2008 hearing, A. L. J. Caldwell's comment that Mr. Lopato had referred to, had lulled Mr. Sadler into the sense of security that he could refile. And the important part of that is that he could refile without worry about the statute of limitations. Right? Yeah, essentially. There was no guarantee about what was going to happen with the statute of limitations on a refiled claim. If in the new claim, Judge Caldwell had looked at the facts, had learned more and said, you know what, you should have told me that in 2005. I don't like it. I'm going to use my, equitably, I'm going to say you do not get to tell. I think that would have been within Judge Caldwell's zone of discretion. Finders of fact are given a wide zone of discretion on what to do with equitable tolling. You're saying he could exercise his discretion to give the guy tolling, and then when the guy relied on that, he then could say, now I'm going to take it back, and sorry guys, but you've now lost. I think he did not. There's nothing equitable about that. No, what I'm saying is that the equitable tolling did not take place in 2008. That didn't happen until much later. So there was only one decision about what to do equitably in this case, and that happened later. And the point I'm trying to make, and what the case law shows, is that trial judges are given a wide zone of discretion about what to do in this area. And, you know, all the Court needs to say here is that Judge Caldwell acted within his discretion. Now, to go to the point about other things, though, in terms of what, by the time I got involved in this case, Mr. Sadler had already passed away. I cannot speak directly to what he knew or should have known back then. But what I can tell you is that in 2005, the Sadler family wrote to the ALJ at the time, telling them about this appointment that was coming up. In a time when the Sadlers were not represented by an attorney, there's evidence at, sorry, excuse me. If you look at Joint Appendix 232, in one of Mr. Lopato's motions, he refers to comments that he had with the Sadlers about new evidence, about why the hearing needed to be continued. And then, ultimately, when asked about it at deposition in 2013, Mr. Sadler was very candid about the context of this 2005 appointment with Dr. Rose. Mr. Sadler was forthright about this appointment.  And so my understanding of the facts, looking back on this now, is that Mr. Sadler felt like he had put this out there. He was not hiding anything. And so I don't think that this can be treated as, you know, as a time bomb, as Mr. Lopato was saying. When we look at equitableness here, do we have to look both at Mr. Sadler's culpability or not, and the ALJ's contribution? I mean, we have to look at both, don't we? Do you think that Sadler's purity of heart would decide the case, no matter whether any advice was given or not, or justified or not, by the ALJ? I mean, of course, there can be abuses of discretion. Discretion does not go all the way. But I understand generally equitable balancing to be about the parties, not about the adjudicator. So I can't point you to any authority on that. But what I would suggest, Your Honor, is that when this Court is reviewing the judge's equitable decision, it should look at the equities of the party. And then you can make a secondary consideration about whether the judge acted with discretion. If the ALJ had never said anything at all about you could refile later, would that affect the strength of your position at all? I think that this would be a harder case if that had happened. But then you're still left with the fact that on the day when the ALJ issued his withdrawal order, which said that withdrawal of this claim is in Mr. Sadler's best interest, by then, three years had already passed from Dr. Rose's report. How could it be in Mr. Sadler's best interest to have a claim that could never be awarded from that point forward? And so I think, anyway, that was the second part of the judge's – So you're charging him with knowledge of Dr. Sadler's report, even though at that point he didn't know it? No. Sorry, I'm not saying that there was any knowledge. I'm just saying that Judge Caldwell provided – there's two core pillars of his reasoning about why equitable tolling should be here. The first is that the judge made representations in the presence of Mr. Sadler that as the judge found, Mr. Sadler relied on. The second is that due to the timing of this, due to the fact that three years passed between the doctor's report and when the judge eventually issued the order of withdrawal, it put Mr. Sadler in a position where it would be impossible for him to refile. And again, so those were the two things. And my point is just to say that if you take away the first pillar, there's still a second one. But here we have both. Can I follow up on the second pillar? Of course, Your Honor. Let's say I'm a district judge and I dismiss a complaint without prejudice to refiling. And I say in the order of dismissal that the plaintiff is – that this ruling is – does not preclude the plaintiff from refiling. The plaintiff then waits a year, refiles the complaint. The defendant moves for dismissal based on the statute of limitations. The plaintiff argues that he or she was equitably tolled – that the limitations period was equitably tolled in light of the fact that I represented that the plaintiff could refile. Does the plaintiff win? No. The plaintiff is not guaranteed a win then. Again, this is – you get to a situation of equitable discretion for the judge. At that point, you know, in this hypothetical case, the judge would look at all the minutia of facts that would be relevant to this. And again, you would have a weaker case than what we have here. Well, but I'm not sure of why. If the plaintiff could not reasonably rely on me as the district judge saying that he or she could refile, then why could Mr. Sadler reasonably rely on A. L. J. Colwell to say that he could refile? Because in both of those situations, the judge said that the plaintiff could refile, that the claimant could refile. What would be the difference? Again, my point is that there is no guarantee, that there's going to be an equitable determination made at a later time. And that is going to be within the discretion of that judge. That's, again, I can't give you a black and white answer because, you know, it depends. I want to go back to one of the questions that Judge Ebel asked your opposing counsel earlier on. Who asked for the – was it the A. L. J. judge? How did it even get into that discussion about being able – was it brought up by Mr. Sadler or was it brought up by the A. L. J.? How did that occur as you look at the record? The first thing I'd say is that there are a lot of missing documents from this time period of the case. You know, Mr. Allback did not properly take care of his records once his legal troubles began. So I cannot give you as firm of an answer as I'd like. But what I can tell you is that there was a motion that was filed by Mr. Allback that was termed a motion to dismiss, that was talking about this idea of refiling a case so that new medical evidence could be put in. Then this hearing happened, and as Mr. Lopato talked while he was there, it looks like that there was – this was essentially a two-way conversation about what should happen with this claim. Well, did the A. L. J. actually tell him that you can refile this at a later day? Yes, the A. L. J. did say that. But, I mean, I still don't understand the question now that Judge Ballback and I are both asking you. Your answer is we don't know how the subject came up. We don't know whether Sadler said, I'd like to withdraw because I'm getting new examinations from the hospital, and I'd like to do that, and then the A. L. J. said, yeah, that's fine, and you can refile. Or did the A. L. J. say, hey, I got a great idea for you. Why don't you refile? I don't know which of those. The record just is agnostic on that. Again, there was a motion that was filed by Mr. Sadler's attorney at the time, Mr. Allback. But was that motion filed before or after the A. L. J. statement? Was it filed at the beginning of the hearing or at the end of the hearing? It was filed before, but there was also a telephonic conference that was happening then, and the timeline of all this is not clear to me from the record. So the motion to withdraw was filed before the hearing began? Yes. At the hearing is where the A. L. J. made this statement? Yes. So it would be a logical conclusion that Sadler had already expressed his desire to withdraw before the A. L. J. commented on it. Yes, but there was also a telephonic hearing for which there is not a transcript of. So that's where it's simply agnostic about that. We're not going to deal with that. Yeah. Okay. Thank you. Okay. Thank you very much, Your Honors. Thank you. Mr. Lopato? Judge Ebell, the appendix at 51 is the transcript from the June 2008 hearing, and that confirms that the claimant and his lawyer initiated the idea of dismissing the claim and filing a new claim. 2001? No. This was in 2008, the June 2008 hearing. And it's the transcript from appendix 51 that refers to the claimant's motion. This discussion about the administrative law judge and what he knew and when he knew it is very similar to the Carlisle v. South Ruth school district case from this circuit in 1981. In that case, this court affirmed a district court's judge's extending a statute of limitation after a 90-day filing problem in an EEOC claim. But the district court was affirmed because the district court knew everything that was necessary. The claimant in that case wrote the judge and said, please appoint a lawyer for me. And the judge said, okay, I appoint a lawyer and I deem the complaint will be deemed filed when you get a court-appointed lawyer. And that happened well beyond the 90-day rule, and the school district challenged that, and this court affirmed and said the district court judge had full knowledge, had full information, and was within his rights to extend the statute of limitation. And the claimant and his new lawyer, who didn't even have a lawyer yet, relied on that. So that's not what we have here. This judge did not have all the facts. He was denied the benefit of this September 2005 medical report, which would have led to an award of benefits to Mr. Sadler in 2008, right at the hearing there, or a few weeks thereafter. I mean, when new evidence comes up, we often get a continuance or keep the record open in these Western cases so we don't have to come out to a live hearing again. But that is very important. The focus here should not be on administrative law, Judge Caldwell. You're going to need a wrap-up. Pardon? You're going to need a wrap-up. It should be on the claimant and his lawyer. Judge Ebel's case from the Queen decision controls here, and I pray that's applied here. And this claim is denied as untimely. Thank you, counsel. This matter will be submitted. We'll argue on behalf of both sides. Thank you for your zealous advocacy.